Filed 7/29/13  Nelson v. Service Corp. International CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHERISE NELSON,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>SERVICE CORPORATION INTERNATIONAL, et al.,<br><br>     Defendants and Respondents. | D061861<br><br><br>(Super. Ct. No. 37-2011-00101261-CU-PA-CTL) |

APPEAL from an order of the Superior Court of San Diego County, William H. Kronberger, Jr., Judge.  Affirmed.

Thomas & Solomon, Annette M. Gifford and Sarah E. Cressman for Plaintiff and Appellant.

Gurnee & Daniels, John A. Mason; Stinson Morrison Hecker and Lonnie J. Williams for Defendants and Respondents.

This appeal presents the unique situation where a former employee is seeking to arbitrate her dispute with her former employer, and the employer refuses to arbitrate, arguing the employee waived her contractual right to arbitrate.  From May 2004 to

December 2004, Cherise Nelson was employed by a company involved in providing funeral related services.[1]  As part of Nelson's employment, she signed an agreement containing an arbitration clause that covered claims arising out of her employment.

Nelson elected to pursue potential class actions in federal court in Arizona instead of demanding arbitration.  These class actions concerned wage and hour claims stemming from Nelson's employment from May 2004 to December 2004.  After litigating for over three years in these various actions, Nelson demanded arbitration against her former employer and related entities.  When the entities did not respond to the arbitration demand, Nelson filed a petition to compel arbitration against SCI; CCFS; SCI Funeral and Cemetery Purchasing Cooperative, Inc.; SCI Western Market Support Center, L.P.; SCI California Funeral Services, Inc., Greenwood Memorial Park; Jane D. Jones; and Thomas Ryan (collectively Respondents).  The superior court denied Nelson's petition, finding she had waived her right to arbitrate.

Nelson appeals, claiming the court erred in finding waiver.  We determine substantial evidence supports the court's finding of waiver and thus affirm.

FACTS AND PROCEDURAL HISTORY

In May 2004, Nelson began working at Greenwood Memorial Park in San Diego County.  As part of her employment, Nelson signed a document entitled "Principles of

---

[1]     The record is unclear what entity actually employed Nelson.  Nelson alleged that she was an employee of "Respondents" but later stated Service Corporation International (SCI) was her employer.  Respondents contend California Cemetery and Funeral Services, LLC (CCFS) was Nelson's employer.  The identity of the actual employer does not impact our analysis here.

Employment and Arbitration Procedures" (the Agreement). The Agreement required the parties to submit to arbitration any dispute regarding Nelson's employment. Further, the Agreement provided that any claim must be brought "within one year of the date the claiming party knew or should have known of the facts giving rise to the claim. Otherwise the claim shall be deemed waived . . . ."

Nelson's employment with the company ended in December 2004.

On January 15, 2008, a purported class action lawsuit entitled *Stickle v. Service Corporation International*, case No. 08-cv-PHX-MHM/JWS (*Stickle*) was filed in the United States District Court of the District of Arizona. The plaintiffs asserted various federal claims (including Fair Labor Standards Act (FLSA) violations related to the nonpayment of purported overtime wages) against Respondents, except CCFS and SCI. On February 8, 2008, Nelson filed her consent to become a named party in *Stickle*. In the consent, Nelson stated that she was "seeking payment of unpaid wages under Federal or State law, including overtime wages, and related relief against" her employer.

Nelson continued participating in the *Stickle* matter, focusing on obtaining class certification. After over a year of litigation, the court in *Stickle* granted conditional certification in September 2009.

Between September 30, 2009 (the date of the conditional certification) and April 1, 2011, 665 additional filings were made in *Stickle*. Nelson's efforts to maintain class certification ended on April 25, 2011 when the court granted Respondents' motion for decertification of the conditionally certified class. Between September 30, 2009 and April 1, 2011 (the date Respondents filed their motion to decertify), Respondents in

3

*Stickle* conducted discovery and prepared its motion to decertify. Over 60 depositions were taken. Respondents also issued over 1,000 sets of interrogatories and reviewed over 740 answers to discovery. Because of incomplete interrogatory responses by the plaintiffs in *Stickle*, Respondents filed motions to compel further responses, which the court granted. Ultimately, Respondents filed a successful motion to decertify the class in *Stickle* and the court dismissed the claims of all opt-in plaintiffs from the action.

In addition to her participation in *Stickle*, Nelson is a current opt-in plaintiff in another federal proceeding in the Arizona District Court: *Riggio v. Service Corporation International*, case No. 10-cv-01265-PHX-MHM/JWS (*Riggio*). On June 17, 2010, Nelson filed her consent to become a party plaintiff in *Riggio*. Nelson admits that her claims in *Riggio* mirror her claims in *Stickle*.[2] Also, apparently the plaintiffs in *Riggio* appealed the district court's dismissal of the action to the Ninth Circuit.

Nelson demanded arbitration against Respondents on April 1, 2011. After Respondents did not respond to the demand, Nelson filed her petition to compel arbitration in San Diego County Superior Court on November 17, 2011. In her petition, she stated that she is seeking her "individual claims for unpaid overtime and other wages and compensation . . . " under California law. Respondents filed answers to the petition and subsequently opposed Nelson's petition.

---

[2] Although the record is somewhat incomplete on this point, Nelson apparently was an unnamed class member in another purported class action filed in the Northern District of California: *Bryant v. Service Corporation International*, case No. 08-1190-SI (*Bryant*).

4

After considering the pleadings and hearing oral argument, the court denied Nelson's petition. In doing so, the court noted: "In this Court's view the considerable discovery, protracted Arizona proceedings, appeal and delay all combine in a way which leads to the denial of this petition. Two lawsuits, prolonged proceedings, discovery and an appeal all combine to require a denial."

Nelson timely appealed.

## DISCUSSION

### I

*SUBSTANTIAL EVIDENCE SUPPORTS THE*
*SUPERIOR COURT'S FINDING OF WAIVER*

Nelson asserts the court committed reversible error in denying her petition to compel arbitration. Specifically, she contends Respondents did not meet their burden of proving by a preponderance of the evidence that Nelson's state law claims were part of the two federal actions. She also insists that her limited participation in the federal actions was not inconsistent with her right to arbitrate.

### A. Standard of Review

"Generally, the determination of waiver is a question of fact, and the court's finding, if supported by evidence, is binding on the appellate court." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*); see *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337 (*Augusta*) [applying substantial evidence review to the issue of waiver of the right to arbitrate]; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 (*Burton*) [same].)

5

However, relying on *St. Agnes*, *supra*, 31 Cal.4th 1187, Nelson argues that we should apply a de novo standard of review because the question before us is whether the superior court properly applied the correct legal standard to the undisputed facts. In *St. Agnes*, our high court acknowledged, in reviewing an order denying a petition to compel arbitration, " '[w]hen . . . the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' " (*Id.* at p. 1196.) Thus, under *St. Agnes*, we will independently review the court's order if there is only one inference that may reasonably be drawn from the undisputed facts.

Because we determine the undisputed facts do not compel only one inference on the record before us, we apply a substantial evidence standard of review. (See *Augusta*, *supra*, 193 Cal.App.4th at p. 337; *Burton*, *supra*, 190 Cal.App.4th at p. 946.) The superior court's "determination of [waiver], ' "if supported by substantial evidence, is binding on an appellate court." ' [Citations.] Only ' "in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court." ' [Citation.]" (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450 (*Adolph*); *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12 (*Zamora*).)

We imply all necessary findings supported by substantial evidence (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1364 (*Berman*); *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991-992 (*Sobremonte*)) and "construe any reasonable

6

inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Burton*, *supra*, 190 Cal.App.4th at p. 946.)

## B.  Arbitration and Waiver

Federal and state law reflects a strong public policy favoring arbitration as " ' "a speedy and relative inexpensive means of dispute resolution." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204; *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___, ___; 131 S.Ct. 1740, 1745.)  Nonetheless federal and California courts may refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including waiver.  (9 U.S.C. § 2; see also Code Civ. Proc., § 1281; *St. Agnes*, *supra*, 31 Cal.4th at pp. 1194-1195.)  Based on the public policy favoring arbitration, claims of waiver receive "close judicial scrutiny" and the "party seeking to establish a waiver bears a heavy burden of proof."  (*Id.* at p. 1195.)

"Although the statute[s and case law] speak[] in terms of 'waiver,' the term is used ' "as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." ' [Citation.]  This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy.  In this context, waiver is more like a forfeiture arising from the nonperformance of a required act.  [Citations.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 944; see also *Zamora*, *supra*, 186 Cal.App.4th at pp. 15-16 [federal law similarly uses the term waiver as a shorthand statement for the conclusion a contractual right to arbitration has been lost].)

7

Here, the arbitration provision declares that the arbitrator is to apply the laws of the state in which Nelson was employed (California) and/or under federal law, if applicable. Here, our analysis does not differ if we apply California or federal law. The Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) apply the same standards in determining waiver claims. (*Zamora*, *supra*, 186 Cal.App.4th at p. 11.) "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1195-1196.) In *St. Agnes*, the California Supreme Court adopted as the California standard the same multifactor test employed by federal courts for evaluating waiver claims. (*Id*. at p. 1196; *Zamora*, *supra*, at p. 15.)

Specifically, the court in *St. Agnes* identified the following as "factors [that] are relevant and properly considered in assessing waiver claims": " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citations.]" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) No one of these factors

8

predominates and each case must be examined in context. (*Burton*, *supra*, 190 Cal.App.4th at pp. 944-945.)

## C.  Analysis

Here, the court found Nelson waived her right to arbitrate her claims by (1) engaging in "considerable discovery"; (2) participating in the "protracted Arizona proceedings"; (3) appealing the adverse ruling in *Riggio*; and (4) delaying her arbitration demand.  The court also found Nelson's delay in demanding arbitration and her participation in the "Arizona litigation" prejudiced Respondents.  These findings justify the court's ruling and substantial evidence supports each finding.  As such, we affirm the superior court's waiver finding.

In its order denying Nelson's petition to compel arbitration, the court did not make its findings within the context of the factors set forth in *St. Agnes*, *supra*, 31 Cal.4th 1187. Nevertheless, the court's findings do correspond with several of the *St. Agnes* factors.

### 1.  Unreasonable Delay

" '[A] demand for arbitration must not be unreasonably delayed. . . .  [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration.' " (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 992.)  As the court explained in *Burton,* "a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate." (*Burton*, *supra*, 190 Cal.App.4th at p. 945.)

"[A] party may [not] postpone arbitration indefinitely by delaying the demand . . . . [¶]  When no time limit for demanding arbitration is specified, a party must

still demand arbitration within a reasonable time. [Citation.] . . . '[W]hat constitutes a reasonable time is a question of fact depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' " (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 29-30.)

Here, there was considerable delay in Nelson demanding arbitration. Her employment ended in December 2004. She did not demand arbitration until April 1, 2011, almost six and one-half years later. The record, however, is not clear when Nelson first became aware or should have been aware of her wage and hour claims against Respondents. At the very least, Nelson was aware of her claims against Respondents when she filed her consent to become a named plaintiff in *Stickles* on February 8, 2008.[3] Nevertheless, Nelson did not demand arbitration for over three years after becoming a named plaintiff in *Stickles*. Surprisingly, Nelson offers no justification for this delay.

Nelson's failure to provide any justification or even an excuse makes this case one of those rare instances where we would be satisfied that a party's unreasonable delay in demanding arbitration by itself supports a finding of waiver. Nelson litigated her wage and hour claims against Respondent, although predominately seeking to certify a class and ultimately failing to do so, for three years prior to demanding arbitration. This unexplained delay justifies a finding of waiver. (See *Adolph*, *supra*, 184 Cal.App.4th at p. 1452 ["We are loathe to condone conduct by which a [litigant] repeatedly uses the

---

3    In her opening brief, Nelson tries to distinguish her federal wage and hour claims from her state wage and hour claims. As we explain below, we find Nelson's arguments unpersuasive.

10

court proceedings for its own purposes . . . all the while not breathing a word about the existence of an arbitration agreement, or a desire to pursue arbitration . . . ."].)[4] Simply put, Nelson's delay undercuts the purpose of arbitration to provide a relatively quick and cost-effective means to resolve disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Her failure to provide *any* explanation for at least a three-year delay in demanding arbitration results in a waiver of her contractual right to arbitrate.

2. Conduct Inconsistent with an Intent to Arbitrate

"A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver. . . ." (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951.) "The trial court must . . . view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate." (*Id*. at p. 952, fn. 2.)

---

[4] Respondents note the Agreement contains a one-year time limit by which a party must notify the other party of its claim in writing or the claim is waived. They assert Nelson did not comply with this provision and a finding of waiver is proper under *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 (*Platt*). *Platt* is not determinative here because unlike the arbitration agreement in *Platt*, the Agreement here does not explicitly place a time limit by when a demand for arbitration must be made. (*Id*. at pp. 318-319.) Instead, the Agreement addresses a time limit for notification of a claim. On the record before us, we cannot determine if Nelson complied with this notification provision. However, although we determine *Platt* to be distinguishable on the facts before us, Nelson's conduct here appears to be at odds with the Agreement's notification provision and the parties' apparent intent to efficiently and quickly resolve disputes through arbitration. Further, this additional fact also makes Nelson's delay in demanding arbitration all the more unreasonable.

11

Here, the court found Nelson participated in two federal cases in the District of Arizona involving her wage and hour claims and engaged in substantial discovery as part of her litigation efforts. In addition, Nelson, as one of the plaintiffs in *Riggio*, appealed a dismissal to the Ninth Circuit. We agree with the superior court that these facts show conduct inconsistent with an intent to arbitrate. Moreover, each of the court's findings is supported by substantial evidence.

Nelson does not dispute that substantial evidence supports these factual findings, but argues that these facts do not support the conclusion that she acted inconsistently with her right to arbitrate because the Arizona federal cases concerned claims under federal law while she seeks to arbitrate only her claims under California law. We are not persuaded.

Nelson contends the facts giving rise to the federal claims pursued in the Arizona cases are factually and legally distinct from the California law claims she seeks to arbitrate. For example, Nelson notes that the FLSA provides overtime pay for all hours worked after 40 in one week while California law requires overtime pay after eight hours of work in a single day. (Compare 29 U.S.C., § 207(a)(1) with Lab. Code, § 510.) Nelson also points out that California law mandates that all hours worked in excess of 12 per day must be paid at double time, and the FLSA contains no analogous provision. (See Cal. Code Regs., tit. 8, § 11040, subd. (3)(A)(1)(b).) Based on these differences, Nelson insists "the facts necessary to establish California wage and hour claims differ from the facts necessary to establish FLSA claims."

12

Nelson's argument overlooks that both the FLSA and California law claims rely on the same essential facts: Nelson's employment from May 2004 to December 2004, her wages during this period, her break and meal times, the number of hours she worked, and Respondents' employment policies. These core facts would then be applied to the elements of a specific cause of action whether federal or state.[5]

In addition, Nelson's contention ignores the language of the Agreement. Under the Agreement, "all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the [employer], its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, defamation, misrepresentation, and emotional distress . . . ." Moreover, the Agreement specifically excluded "(1) any claims brought under federal discrimination laws (including Title VII of the Civil Rights Act) or any federal laws [sic] administered by the Equal Employment Opportunity Commission, (2) claims for workers' compensation or unemployment benefits, or (3) claims brought to enforce any noncompetition or confidentiality agreement which may exist between the parties." The Agreement did not remove claims under the FLSA, and Nelson does not argue such. Thus, under the Agreement, both the federal and state claims could have been arbitrated.

---

[5] Nelson's argument that her federal wage and hour claims are different from her state wage and hour claims also undermines any justification for delay. If the claims were truly different, it raises the question: why did Nelson wait at least three years to demand arbitration. Her failure to answer this question is telling.

Further, when Nelson filed her consent to be a named plaintiff in both Arizona cases, she indicated she was "seeking payment of unpaid wages under Federal or State law" leaving open the question whether she would litigating her claims under California law. The fact that Nelson sought to litigate a claim that was subject to arbitration and did so over several years strongly supports the finding that Nelson acted inconsistently with her right to arbitrate. Merely because she now claims she never pursued a state cause of action in the Arizona cases does not render her conduct any less inconsistent with her right to arbitrate because both her federal and state law claims are based on the same basic facts.[6]

If Nelson intended to preserve her right to arbitrate, we would expect to see something in the record to show this intent, perhaps a letter to opposing counsel, a statement of claim, or an actual arbitration demand with a request to stay pending the outcome of the federal class actions. Here, there is no such evidence in the record. Instead, Nelson remained silent about arbitration and litigated her wage and hour claims against Respondents as a purported class member for over three years. It appears that she

---

[6] Nelson insists that waiver can only be found if it is established that the party seeking arbitration previously litigated the exact same claims that party now seeks to arbitrate. Thus, she concludes her litigation of federal wage and hour claims does not bar her arbitration of state wage and hour claims. However, she cites no California authority for this proposition. The federal cases Nelson does cite do not compel the adoption of this bright line rule in employment litigation allowing a plaintiff to split federal and state wage and hour claims that are based on the same employment, conduct, and policies. (See generally *Microstrategy, Inc. v. Lauricia* (4th Cir. 2001) 268 F.3d 244; *Subway Equipment Leasing Corp. v. Forte* (5th Cir. 1999) 169 F.3d 324; *Doctor's Associates, Inc. v. Distajo* (2d Cir. 1997) 107 F.3d 126.) Further, our high court was clear that no single test applies to a determine whether a contractual right to arbitrate has been waived. (See *St. Agnes*, *supra*, 31 Cal.4th at pp. 1195-1196.)

14

only demanded arbitration when it was clear Respondents would move to decertify the conditional class. Simply put, there is nothing in Nelson's conduct that indicates an intent to arbitrate and her actions suggest a desire to litigate her claims in federal court instead of arbitration.

### 3. Prejudice

" 'In California, whether or not litigation results in prejudice also is critical in waiver determinations.' [Citation.] 'The moving party's mere participation in litigation is not enough; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration.' [Citation.]" (*Augusta*, *supra*, 193 Cal.App.4th at p. 340; *St. Agnes*, *supra*, 31 Cal.4th at p. 1203.)

"[C]ourts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.) In *Burton*, the court explained "a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes.' [Citation.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 948.)

15

"[C]ourts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) But courts " 'may consider . . . the expense incurred by that party from participating in the litigation process' " and the length of delay as factors bearing on whether the opposing party has been prejudiced. (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 995.) "[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration as a ' " 'speedy and relatively inexpensive' " ' means of dispute resolution. [Citation.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 948.)

Here, substantial evidence supports the trial court's finding that Nelson prejudiced Respondents by delaying her arbitration demand for at least three years and litigating class claims in multiple courts, including one appeal. The parties engaged in substantial discovery, involving more than 60 depositions and extensive written discovery. Respondents successfully moved to compel further discovery responses. (See *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 (*Hoover*) ["Prejudice sufficient for waiver will be found where instead of seeking to compel arbitration, a party proceeds with extensive discovery that is unavailable in arbitration proceedings."].) Respondents filed pleadings to oppose conditional certification of a class in *Stickles* and subsequently moved to decertify the conditional certification. Nelson's arbitration demand coincided with Respondents' effort to decertify the conditional class. "[Nelson's] actions substantially impaired [Respondents'] ability to obtain the cost savings and other

16

benefits provided by arbitration."  (*Ibid.*; see *Adolph*, *supra*, 184 Cal.App.4th at pp. 1451-1452.)

Nelson contends Respondents were not prejudiced because she did not attempt to litigate her state law claims.  We reject this argument for the same reasons we discuss above:  Nelson's wage and hour claims, whether based in federal or state law, emanate from the same basic facts.

Nelson also insists Respondents' participation in the federal class action cases for three years actually benefited not prejudiced them because "Nelson and the other employees who were part of that action lost the benefits of proceeding collectively."  Nelson fails to consider that while Respondents were mired in three years of class action litigation in federal court, they were denied their bargained for benefit of arbitration of Nelson's claims.  This denial was the result of Nelson's and other employees' conduct and decision to pursue a class action in federal court.  The fact that Nelson's efforts ultimately proved unsuccessful does not somehow lessen the prejudicial impact of her actions.  Her actions whether successful or unsuccessful denied Respondents the benefits of arbitration and allowed her to take advantage of discovery to which she would not have been entitled to in arbitration.  (See *Hoover*, *supra*, 206 Cal.App.4th at p. 1205; see *Adolph*, *supra*, 184 Cal.App.4th at pp. 1451-1452.)

Finally, we are not persuaded by Nelson's assertion that her participation in the Arizona cases did not prejudice Respondents because other former employees were involved in those cases and Respondents would have had to defend the litigation in any event.  Nelson sought the advantage of litigating her wage and hour claims against

17

Respondents as part of a purported class. Had she been successful, she would have benefited from being part of the class. Indeed, at oral argument, Nelson's counsel admitted had the class remained certified, Nelson would not have sought arbitration. Her efforts proved unsuccessful, however, and she cannot now hide behind the fact that other plaintiffs participated in the actions to avoid the consequence of her decision: prejudice to Respondents resulting in the waiver of her contractual right to arbitrate.

### D. Conclusion

In summary, the record before us does not establish a lack of waiver as a matter of law. (See *Adolph*, *supra*, 184 Cal.App.4th at p. 1450.) We are satisfied substantial evidence supports the court's finding of waiver.

### DISPOSITION

The order is affirmed. Respondents are awarded their costs of appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

AARON, J.