Filed 9/8/16  Gemini Basketball Holdings v. Williams Group Holdings CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GEMINI BASKETBALL HOLDINGS, LLC, | B260257 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC494542) |
| v. | |
| WILLIAMS GROUP HOLDINGS, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed with directions.

Law Offices of John R. Walton, John R. Walton and Katherine E. Hashimoto for Plaintiff and Appellant.

Buchalter Nemer, Kalley Aman, Sarah A. Syed and Robert M. Dato for Defendant and Respondent Williams Group Holdings, LLC.

Riley Law Group and Grant K. Riley for Defendant and Respondent Gemini Basketball, LLC.

_____

## INTRODUCTION

Plaintiff Gemini Basketball Holdings, LLC (GBH) appeals from the court's denial of its motion to compel arbitration, asserting that the court erred in concluding that GBH waived its right to arbitration. We reverse because GBH did not act inconsistently with the intent to arbitrate, did not unreasonably delay in seeking arbitration, did not engage in misconduct or act in bad faith, and did not prejudice the defendants.

## FACTS AND PROCEDURAL BACKGROUND

On October 25, 2012, GBH sued attorney Marc Samotny and his law firm, Patzik, Frank & Samotny, Ltd. (collectively Samotny) alleging four causes of action: legal malpractice, breach of fiduciary duty, fraud and negligent misrepresentation (the malpractice action). As explained in the complaint, GBH served as the managing member of a limited liability company, Gemini Basketball LLC (Gemini), after Gemini bought the Los Angeles Sparks basketball team in 2006. GBH borrowed $3.25 million (#07 loan) from Broadway Federal Bank (the Bank) to finance the purchase. Williams Group Holdings, LLC (Williams) invested in Gemini in 2007, and by 2010, became a co-managing member of Gemini along with GBH. Meanwhile, GBH borrowed another $750,000 from the Bank (#05 loan) in 2008, investing the money in Gemini in exchange for Gemini's promise to repay the loan.

In February 2011, a month before the two loans came due, Williams introduced GBH to Samotny and Samotny agreed to represent Gemini and GBH in their efforts to restructure or modify the Bank loans. GBH's complaint alleged that Samotny failed to disclose or obtain GBH's waiver of his potential conflict of interest in representing Williams and GBH. GBH claimed Samotny abandoned GBH when the conflict materialized. Samotny allegedly breached duties by withholding from GBH material information, such as the Bank's insistence on obtaining personal guarantees from Williams and/or its principals, Williams's refusal to invest more money in Gemini or the Sparks team, and the Bank's intention to proceed with default and enforcement procedures against GBH.

2

Three months after suing Samotny in the malpractice action, GBH filed a January 25, 2013 first amended complaint (FAC) identifying Gemini as a nominal defendant and adding Williams as an additional defendant along with a Bank director, Paula Madison (Madison), and accountant Edward Chez and his accounting firm Schultz & Chez, LLP (collectively Chez). The FAC added nine causes of action against the various additional defendants for fraud, negligent misrepresentation, breach of fiduciary duty, violation of securities laws, and declaratory relief. Among other things, GBH alleged that Williams and Madison concealed their positions as directors of the Bank and influenced the Bank to pursue GBH rather than Gemini for repayment of the loans. GBH accused Williams and Madison of entering into, without any intention of performing, a January 2012 agreement under which Williams increased its ownership interest in Gemini in exchange for Gemini's forgiveness of GBH's obligation to pay accrued management fees. The FAC also accused Williams, Madison, Gemini and Chez of failing to allocate to GBH its pro rata share of tax credits.

Williams first appeared in the action on March 12, 2013, filing jointly, with Madison, a demurrer and motion to strike with a hearing date of June 4, 2013. Four weeks later and nearly two months before the hearing on the demurrers, GBH's attorney sent Williams's and Madison's counsel an April 11, 2013 demand for arbitration via email. On April 18, and May 2, 2013, GBH notified them of its intention to seek an ex parte order staying proceedings pending arbitration. We have no record indicating that Williams or Madison responded in any way to GBH's demand for arbitration or intention to seek a stay.

On May 6, 2013, GBH filed a motion to compel Williams, Madison, and Gemini to arbitration, giving notice of a September 5, 2013 hearing date. GBH supported its motion with a declaration from its managing member, Katherine Goodman, who averred that Williams, Madison, and Gemini were bound by an arbitration provision contained in paragraph 11.17 of Gemini's Amended and Restated Limited Liability Company Agreement, and that all of Gemini's operating agreements contained a similar provision.

3

One day later, on May 7, 2013, GBH filed its ex parte application for partial stay pursuant to Code of Civil Procedure section 1281.2, subdivision (c). GBH argued that a failure to stay the action posed the possibility of conflicting rulings, referencing Williams's demurrer and motion to strike set for hearing on June 4, 2013. Williams urged the court to deny the motion for stay because GBH failed to identify an agreement with Madison to arbitrate disputes, and because GBH had waited six months to demand arbitration while the defendants invested time in "comprehensive demurrers."

The court's May 7, 2013, minute order memorialized the denial of GBH's motion to stay and its order granting the motions of Samotny and Chez to quash for lack of jurisdiction. GBH appealed the jurisdictional rulings and filed timely opposition to the pending demurrers. At the June 10, 2013 hearing, the court sustained Williams' demurrer without leave to amend on some causes of action and with leave to amend on others. In response to GBH's second amended complaint, Williams again demurred and moved to strike.

On August 6, 2013, GBH filed an amended motion to compel arbitration, informing the court, among other things, that GBH had sued Williams and Gemini in arbitration on July 3, 2013 (Claim No. AAA 72 196 Y 000609 13). A few days later, on August 9, 2013, GBH petitioned this Court for a writ of mandate to temporarily stay the litigation, pending resolution of the motion to compel arbitration. This court granted the petition and temporarily stayed the proceedings on August 21, 2013.

Williams and Gemini meanwhile filed oppositions to the amended motion to compel arbitration. At the September 5, 2013 hearing on the amended motion, the trial court imposed a stay on all litigation in the case pending the resolution of GBH's appeals of the court's dismissals of Madison, Samotny, and Chez. The court also continued the hearing on the motion to compel arbitration to January 16, 2014. On January 16, 2014 the court kept the stay in place and continued all proceedings to September 10, 2014. In June 2014, GBH dismissed the Madison and Samotny appeals and filed a request for statement of decision on the issues raised in its motion to compel arbitration.

The court heard and denied the motion to compel arbitration on October 23, 2014, concluding that GBH waived its right to arbitrate its disputes with Williams and Gemini. Likening GBH to the plaintiff in *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 783-784 (*Christensen*), the trial court stated:

> "The matter at bar is similar to that of *Christensen*. Plaintiff, who has the option and the control to file, filed this case in October 2012. Instead of petitioning for arbitration immediately thereafter, [P]laintiff instead chose to file a first amended complaint in January 2013. It was not until after two motions to quash and three demurrers ([brought by] Williams, Madison and Gemini) were filed that [P]laintiff changed [its] mind and sought arbitration, filing that motion six and a half months later. By that time, the parties - especially Williams - have incurred substantially more than $2,300.00 in fees and costs by reviewing and analyzing an original and first amended complaint, drafting and appearing on the demurrers and motions to strike, attending case management conferences and ex parte appearances and preparing third party subpoena duces tecum. Further, with regard to the subpoena, there is undoubtedly, as the *Christensen* court noted, 'faded memories' and perhaps 'lost records.' Additionally, [P]laintiff - ignoring the appropriate court procedure - filed [an] application for arbitration with [the American Arbitration Association,] AAA[,] in May 2013. Defendant, again, incurred costs and fees associate[d] with that proceeding. [¶] Given the ruling and the language of *Christensen*, as well as the facts of this case, the motion to compel arbitration is DENIED."

GBH now appeals this order. Williams opposes the appeal joined by nominal defendant Gemini.

## DISCUSSION

The sole issue on appeal is whether GBH waived its right to arbitration. We review the issue de novo. As our Supreme Court recently reiterated, "In light of the policy in favor of arbitration, 'waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375 (*Iskanian*).) "Because arbitration is a highly favored means of settling such disputes, the courts have been admonished to 'closely scrutinize any allegation of waiver of such favored right' [citation], and to 'indulge every intendment to give effect to such proceedings' [Citations.] Accordingly,

5

in the face of conflicting authorities, we should endeavor to reach a result which comports with the 'strong public policy' favoring arbitration." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 (*Doers*).) "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' " (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*Saint Agnes*).) As the facts are undisputed in this case, we review GBH's appeal de novo.

Although waiver ordinarily refers to the voluntary relinquishment of a right, it " ' "has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." [Citation.]' [Citation.] [¶] '. . . California courts have found a waiver of the right to demand arbitration in a variant of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure.' . . . The fact that the party petitioning for arbitration has participated in litigation, short of a determination on the merits, does not by itself constitute a waiver." (*Iskanian, supra,* 59 Cal.4th at pp. 374-375.) Our Supreme Court has explained that while there is no single test for establishing waiver, the courts should examine whether the party seeking arbitration (a) has previously taken steps inconsistent with the intent to invoke arbitration; (b) is unreasonably delayed in seeking arbitration; (c) has acted in bad faith or with willful misconduct; or (d) has caused prejudice. (*Christensen, supra,* 33 Cal.3d at p. 782; see *Saint Agnes, supra,* 31 Cal.4th at p. 1196; *Iskanian,* at p. 375.) Whether the party opposing arbitration was prejudiced by a delay in seeking arbitration is the "critical" factor when determining whether there has been a waiver. (*Saint Agnes,* at p. 1203.)

6

### a. Steps Inconsistent with an Intent to Arbitrate

"[T]he mere filing of a lawsuit *does not* constitute a waiver of the right to arbitrate." (*Doers, supra,* 23 Cal.3d at p. 183 (italics added).) "The trial court must . . . view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate." (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 952, fn. 2.) The extent to which the party seeking arbitration has invoked the procedures of the judicial forum before moving to compel arbitration is a key factor. (See *Doers,* at p. 188.)

For example, where a party seeking arbitration has conducted discovery, filed dispositive motions on the merits, or otherwise invoked judicial procedures, the courts have regarded such conduct as inconsistent with an intent to arbitrate. (*Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 450 ["While the filing of a dispositive motion has been found to contribute to waiver, such a motion ordinarily must involve 'the merits of arbitrable issues.' "]; *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1100-1104 [waiver based on pursuit of litigation for 15 months before requesting arbitration]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 (*Guess?*) [waiver based on participation in discovery for three months before asserting right to arbitration]; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 994 (*Sobremonte*) [filing two demurrers, a cross-complaint, and a motion to transfer to municipal court while engaging in extensive discovery inconsistent with desire to arbitrate]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 213 [two-day deposition of opposing party and obtaining 1,600 pages of documents in discovery inconsistent with intent to arbitrate].)

On the other hand, where there is substantial delay but the party's conduct is not inconsistent with an intent to proceed with arbitration, the courts have not found waiver. Indeed, in *Iskanian, supra,* 59 Cal.4th at pp. 377-378, our Supreme Court found no inconsistent conduct supporting a waiver where the defendant promptly petitioned for arbitration, withdrew the petition as futile based on a change in law, and spent three years engaged in discovery and litigation on the merits before renewing the petition based on a

7

further change in the law. In this case, the delay was three months rather than three years and GBH did not promulgate discovery, file dispositive motions, or otherwise actively prosecute its claims against any parties to an arbitration agreement before moving to compel arbitration. Although GBH filed the first amended complaint and served Williams and other defendants, the mere filing of a lawsuit is not sufficient to constitute a waiver of the right to arbitrate. We therefore conclude that GBH did not take steps inconsistent with the intent to arbitrate prior to compelling arbitration.

### b. *Unreasonable Delay*

" '[A] demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration.' " (*Sobremonte, supra,* 61 Cal.App.4th at p. 992.) The party seeking to compel arbitration, "ha[s] the responsibility to 'timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation.' " (*Id.* at pp. 993–994.)

Here, GBH's dispute with parties covered by an arbitration agreement was first articulated in its January 25, 2013 amended complaint. The malpractice action filed several months earlier did not name Williams or Gemini.[1] There is no evidence GBH sent pre-litigation demand letters to Williams or that its dispute with any arbitral defendants otherwise ripened any earlier than January 25, 2013.

Williams first appeared in the action on March 12, 2013, filing a demurrer and motion to strike. Less than a month later, on April 11, 2013, GBH directed a formal written demand for arbitration to counsel for Williams and Gemini via email. On April 18, 2013, GBH notified the same counsel of its intent to move for a stay of court

---

[1]  The trial court's observation that "[i]t was not until after two motions to quash and three demurrers ([brought by] Williams, Madison and Gemini) were filed that [P]laintiff changed [its] mind and sought arbitration, filing that motion six and a half months later" overlooks the fact that the original malpractice complaint filed October 25, 2012 did not name the arbitral defendants. As explained above, only three months elapsed from the time when GBH sued the arbitral defendants and the time it moved to compel arbitration and stay the hearing on defendants' pending motions.

8

proceedings pending arbitration. GBH reasonably waited a few weeks for Williams to reply to the demand for arbitration. GBH then filed its May 6, 2013 motion to compel arbitration and moved, the next day, to stay all court proceedings pending the September 5, 2013 hearing on its motion. In summary, GBH demanded arbitration a month after Williams first appeared in the action and gave notice a week later that it wanted to stay all court proceedings. After several weeks passed with no response, GBH filed its motion to compel arbitration and immediately moved to stay proceedings. In total, a little more than three months elapsed from January 25, 2013 when GBH sued Williams and the filing of its May 6, 2013 motion to compel. In the meantime, aside from filing and serving the amended complaint, GBH did nothing to invoke the jurisdiction or procedures of the court.

We conclude that waiting two and a half months to demand arbitration and three months to move to compel arbitration was not unreasonable, particularly where, as in this case, the moving party's conduct was consistent with an intent to arbitrate. (See *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 663 [defendant's 14-month delay in filing motion to compel arbitration was not sufficient to support waiver; although defendant engaged in discovery, and filed two motions in court, "there was no evidence that [the moving party] stretched out the litigation process, gained information about [the opposing party]'s case they could not have learned in an arbitration, or waited until the eve of trial to move to compel arbitration"].) We find no support for Williams's contention that GBH's failure to dismiss its lawsuit rather than obtain a ruling on its motion to compel arbitration was inconsistent in an intent to arbitrate.

Williams asserts that "other courts have found comparable delays . . . [to GBH's three month delay] to be unreasonable and a justification for finding waiver of arbitration," citing *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436 (*Lewis*); *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331 (*Augusta*); *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443 (*Adolph*); *Guess?, supra,* 79 Cal.App.4th 553; and *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220 (*Kaneko*). However, in all five cases, the parties seeking arbitration actively

9

engaged in litigation during the delay period, acting contrary to an intent to arbitrate and to the prejudice of their opponents. (See *Lewis,* at p. 446 [defendant's four-month delay in seeking arbitration unreasonable where defendant filed multiple demurrers and motions to strike and participated in discovery before raising its right to arbitration]; *Augusta,* at p. 338 [plaintiff's six and a half-month delay in seeking arbitration unreasonable where plaintiff meanwhile engaged in formal discovery prohibited under the arbitration agreement and filed motions to compel discovery.]; *Adolph,* at p. 1451 [defendant's six-month delay in demanding arbitration unreasonable where the defendant filed two demurrers, accepted and contested discovery requests, scheduled further discovery, and made no mention of arbitration in case management statement.]; *Guess?,* at p. 558 [plaintiff's less than four month delay unreasonable where plaintiff used litigation process to test validity of its claims, compromising efficiency and benefits of arbitration.]; *Kaneko,* at pp. 1228-1229 [plaintiff's five-month delay in seeking arbitration unreasonable where plaintiff meanwhile engaged in settlement negotiations, obtaining information about opposing parties' defenses and strategies.].)

In contrast to the parties seeking arbitration in these cases, GBH did not conduct discovery or prosecute any motions in court. The cases cited by Williams are therefore inapposite.

### c. *Bad Faith or Willful Misconduct*

The trial court compared the present case to *Christensen*, a case that Williams also cites extensively in its briefing. *Christensen* is distinguishable, however, because the basis for the court's finding of waiver in *Christensen* was the plaintiffs/moving parties' bad faith and misconduct. In *Christensen*, the owners of an apartment building sued their contractors. The plaintiffs "candidly admit[ted] that they intended all along to avail themselves of arbitration, but filed their superior court action only to obtain a set of verified pleadings . . . which would reveal their opponents' legal strategies and theories." (*Christensen, supra,* 33 Cal.3d at p. 783.) The Supreme Court affirmed a finding of waiver, noting that such "procedural gamesmanship provides ample support for the trial

judge's conclusion that plaintiffs filed their action in bad faith, and by doing so waived their right to arbitrate." (*Id*. at p. 784.)

Because the court's holding was based on bad faith rather than delay, *Christensen* did not focus on or calculate the amount of time that elapsed from the filing of plaintiffs' complaint and their dismissal of a first amended complaint the day before the hearing on defendants' demurrer. Although *Christensen* noted the two months that elapsed between plaintiffs' dismissal of the amended pleading and the petition to compel arbitration, the parties earlier activities (serving the complaint, demurring, amending the complaint, and re-demurring) necessarily consumed several months of additional time. Therefore, in *Christensen*, the lapse of time between the filing of the complaint and the filing of the motion to compel arbitration was far longer than the three months between GBH's January 25, 2013 lawsuit against the arbitral defendants and its May 6, 2013 motion to compel arbitration. (*Christensen, supra,* 33 Cal.3d at p. 781.)

More importantly, the record in this case is devoid of any evidence of bad faith or misconduct. Unlike the plaintiffs in *Christensen*, who consciously litigated two rounds of demurrers to discover their opponents' defenses, GBH moved to stay proceedings and compel arbitration almost two months before the court heard Williams's initial demurrer to the complaint and before GBH's opposition to the demurrer was due to be filed. GBH's filing of the motion to stay is a critical distinction because it gave Williams the option of avoiding further court proceedings by agreeing to arbitration or by acceding to a temporary stay of court proceedings. By instead successfully opposing the stay, Williams forced GBH to oppose the pending demurrer and file a timely amendment to its complaint after Williams's demurrer was sustained.

On the other hand, aside from filing and serving the complaint against Williams, GBH took no action inconsistent with its desire to arbitrate. Even after its motion to stay was denied, GBH did not promulgate discovery or file motions with the court. To the contrary, it sued Williams in arbitration, took steps to prosecute the arbitration with AAA and successfully petitioned this court for a stay of all court proceedings pending a

11

determination on its motion to compel arbitration.[2]  In contrast to *Christensen*, there is no evidence in this case of any procedural gamesmanship or bad faith.

### d.    *Prejudice*

"In California, whether or not litigation results in prejudice . . . is critical in waiver determinations." (*St. Agnes, supra,* 31 Cal.4th at p. 1203.)  Prejudice does not occur by a party's mere participation in litigation.  (*Ibid*.)  Nor does it result simply because " 'the party opposing arbitration shows . . . it incurred court costs and legal expenses.' " (*Lewis, supra,* 205 Cal.App.4th at p. 452.)

On the other hand, prejudice can be found where a party's delayed demand for arbitration deprives the opposing party "of the benefits available through arbitration, including a speedy resolution of the dispute." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 949; *Sobremonte, supra,* 61 Cal.App.4th at p. 996; *Davis v. Continental Airlines, Inc., supra,* 59 Cal.App.4th at p. 216.)  Prejudice can also be shown where a party seeking arbitration uses discovery procedures unavailable in arbitration, or causes the other side to reveal trial tactics or legal strategies.  (*Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1196, italics omitted ["[P]rejudice can be established when the party seeking arbitration used judicial discovery procedures not available in arbitration to obtain discovery of the opposing party's strategies, evidence, theories, or defenses."].)  In sum, prejudice will be found where the conduct of the moving party "substantially undermined [the] important public policy [of arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes, supra,* 31 Cal.4th at p. 1204.)

---

[2]    Although GBH continued to actively litigate claims against the attorneys and accountants who did not sign the arbitration agreement, its prosecution of claims against those parties is not relevant to our decision.

12

Here, GBH affirmatively but unsuccessfully took action to avoid causing prejudice, filing a motion to stay all proceedings before the court heard Williams's first demurrer. Even after the court denied the stay, GBH took no action to undermine the process of arbitration. Although the court did not rule on GBH's motion to compel arbitration until October 2014, more than 18 months after GBH amended its complaint to add the allegations against Williams and other arbitral defendants, GBH was not responsible for any of the delay or litigation expenses incurred after its mid-April 2013 demand for arbitration and notice of intent to request a stay. From that time forward, GBH only acted defensibly, opposing Williams's and Madison's pending demurrers and motions to strike and timely filing an amended complaint after the demurrer was sustained with leave to amend. As it was Williams's decision to insist on obtaining a ruling on its first demurrer and to file a second demurrer before the motion to compel arbitration was set for hearing, any disclosure of strategy in its court filings and the consequences of any rulings made by the court are matters of its own making.

We therefore conclude that based on the factors articulated by the Supreme Court, Williams has failed to demonstrate waiver. GBH's delays in demanding and moving to compel were not unreasonable. From the time of its April 18, 2013 demand for arbitration, GBH's conduct has been fully consistent with an intent to arbitrate. It did not cause Williams to suffer prejudice and evinced no bad faith or other misconduct compromising its right to arbitrate. Williams has accordingly failed to meet the " 'heavy burden' " required to undo the parties' agreement to resolve disputes by arbitration. (*Iskanian, supra,* 59 Cal.4th at p. 375.)

13

## DISPOSITION

The court's order denying GBH's motion to compel arbitration is reversed.  The trial court is instructed to enter an order compelling Defendants and Respondents Williams Group Holdings and Gemini Basketball LLC to arbitrate.   Plaintiff and Appellant Gemini Basketball Holdings, LLC is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HOGUE, J.[*]

I concur:



EDMON, P. J.



ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.