[No. D056262. Fourth Dist., Div. One. Mar. 4, 2011.]

MARK AUGUSTA, Plaintiff and Appellant, v.
KEEHN & ASSOCIATES et al., Defendants and Respondents.

---

---

## Counsel

Stanford and Associates, Dan L. Stanford and David R. Hendricks for Plaintiff and Appellant.

Pettit Kohn Ingrassia & Lutz, Douglas A. Pettit and Christina G. Bernstein for Defendants and Respondents.

---

## Opinion

**McCONNELL, P. J.**—Mark Augusta appeals an order denying his petition to compel arbitration of his legal malpractice action against Keehn & Associates and L. Scott Keehn (together Keehn). Augusta contends the trial court erred by finding he waived his right to arbitrate by unreasonably delaying in seeking arbitration, and by taking steps inconsistent with an intent

to invoke arbitration, e.g., obtaining discovery from Keehn through court processes, which caused prejudice to him. We affirm the order as supported by substantial evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2008, Augusta filed a complaint against Keehn for legal malpractice. The parties' contract included a clause for binding arbitration, but Augusta did not invoke it.

In February 2009 Augusta filed a first amended complaint (FAC), which added counts for fraud and breach of fiduciary duty based on the same conduct as the negligence claim. The FAC alleges as follows. Keehn represented Augusta, a licensed securities salesman, between 2002 and 2008 in a bankruptcy proceeding that arose from substantial awards clients obtained against him in securities litigation over certain bonds that defaulted. The bonds, which turned out to be a Ponzi scheme, were recommended to Augusta and underwritten by his then employer. In a July 3, 2002 letter, Keehn allegedly gave Augusta faulty advice that the bankruptcy filing automatically extended the statute of limitations for a legal malpractice action (Code Civ. Proc.,[1] § 340.6) against the attorneys who jointly represented him and his former employer in the securities litigation (hereafter underlying malpractice action). As a result, the attorneys in the underlying malpractice action obtained summary judgment on the negligence cause of action of Augusta's complaint, which left only claims for intentional misconduct. The loss of the negligence claim caused a $3 million reduction in a settlement Augusta received.

Keehn represented himself during the first few months of the litigation. He responded to the FAC by serving Augusta with a prefiling copy of a motion for monetary sanctions for the bringing of a frivolous lawsuit (§ 128.7, subd. (b)), on the ground the action was time-barred since the only alleged wrongdoing occurred in 2002. Keehn argued the statute of limitations was not tolled by his continued representation of Augusta into 2008, because he represented Augusta only in the bankruptcy matter and not in the underlying malpractice action. Under section 128.7, subdivision (c)(1), the offending party may avoid sanctions by withdrawing the pleading without penalty within a 21-day "safe harbor" period. (*Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535, 53 [101 Cal.Rptr.3d 803].) Augusta did not

---

[1] Further statutory references are also to the Code of Civil Procedure unless otherwise specified.

dismiss the FAC, and on March 25, 2009, Keehn filed his motion for sanctions. Keehn also demurred to the FAC on the statute of limitations ground.

On March 13, 2009,[2] Augusta propounded to Keehn form interrogatories, special interrogatories (14), requests for admissions (29), and a demand for production of documents. Keehn served responses, and on April 17, Augusta sent Keehn a 23-page meet and confer letter complaining the responses were "inadequate and spurious" and demanding supplemental responses within five days. The letter cited provisions of the Civil Discovery Act (§ 2016.010 et seq.), and warned that "[f]ailure to do so will result in the appropriate motions to compel and . . . sanctions for your failure to comply." Also on April 17, the court denied Keehn's motion for monetary sanctions under section 128.7.

Keehn did not supplement his discovery responses, and on May 1, Augusta applied ex parte for an order continuing the hearing on the demurrer so he could first move to compel discovery. The court denied the application.

On May 22, Augusta noticed Keehn's deposition for June 24 and 25. On May 28, Augusta filed motions to compel further responses to his requests for admissions and form interrogatories, and for a total of $12,260 in sanctions. On May 29, the court overruled Keehn's demurrer to the FAC.

On June 15, Keehn associated in defense counsel. Augusta notified Keehn's new counsel that a case management conference was scheduled for June 19, and the hearing on Augusta's motions to compel discovery was scheduled for August 14. Further, Augusta supplied Keehn's new counsel with a copy of the notice of Keehn's deposition. Keehn answered the FAC and alleged as an affirmative defense that the action was subject to arbitration.

At the June 19 case management hearing, the court scheduled trial for January 2010. After the hearing, Augusta confirmed in writing that Keehn advised Augusta he would not seek arbitration after all. He also confirmed that Keehn's deposition was still scheduled for June 24 and 25, and that he and his counsel had "engaged in significant efforts to prepare for this deposition." Keehn asked to reschedule the deposition, and Augusta agreed to do so until sometime in July.

---

[2] All further dates are also in 2009 unless otherwise specified.

On June 24, however, Augusta cancelled Keehn's deposition. In a letter to Keehn's attorney, Augusta's attorney advised that he intended to petition to compel arbitration, and, "[f]rankly, we do not want you or Mr. Keehn to suggest to the Court that we have somehow 'waived' our client's right to compel arbitration by taking Mr. Keehn's deposition." On June 25, Augusta made a written demand on Keehn for arbitration. Keehn responded that he opposed arbitration based on Augusta's litigation of the matter in superior court for many months.[3]

On July 2, Augusta filed a petition to compel arbitration. Keehn opposed the petition on the ground of waiver.

On July 21, Augusta agreed to take his motions to compel further discovery off calendar in exchange for Keehn's agreement to provide supplemental discovery responses. In a confirming letter, Augusta's attorney stated that if he deemed the supplemental responses inadequate, and if the court denied the motion to compel arbitration, Augusta reserved the right to file a subsequent motion to compel further discovery.

Before Augusta petitioned to compel arbitration, Keehn had propounded discovery requests to him. In late August, Augusta responded to each of the requests by stating discovery is not available in arbitration. Augusta objected to Keehn's notice of his deposition on the same ground.

On October 9, the court issued a tentative ruling denying Augusta's petition to compel arbitration. The court found Augusta unreasonably delayed in demanding arbitration, and he took steps inconsistent with an intent to invoke arbitration. The court explained: "In the time between filing his lawsuit and demanding arbitration, plaintiff served discovery to defendants, engaged in meeting and conferring about defendants' discovery responses, noticed plaintiff's deposition, filed two motions to compel discovery and until June 24, 2009, notably after defendants obtained counsel, expressed his intentions of continuing with the depositions and motions to compel." The court determined Augusta's conduct prejudiced Keehn as follows: "While [Augusta] ultimately cancelled the deposition and the motions were taken off-calendar, [Keehn] responded to discovery and provided supplemental responses before the discovery motion date. In [his] discovery responses, [Keehn] disclosed at least some of [his] trial theories which would not have been disclosed if the case was in arbitration. [Keehn] lost whatever efficiencies [he] would have gained through arbitration."

During a hearing on the same date, the court asked Augusta to explain his delay in seeking arbitration. He attributed the delay to Keehn. He argued that

---

[3] Inconsistently, in Keehn's July 1 amended answer to the FAC, he again alleged as an affirmative defense that the action was subject to arbitration.

as an attorney, Keehn should have moved to compel arbitration instead of filing a motion for sanctions and demurring to the FAC, and "voluntarily" responding to his discovery requests. The court confirmed its tentative ruling.

## DISCUSSION

### I

### *Waiver Factors/Standard of Review*

"Among the principal reasons motivating persons to agree to arbitrate their differences is likely to be the avoidance of the courtroom with its attendant delays, costs, and publicity, and the avoidance of procedures associated with the formal litigation of causes." (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 783 [191 Cal.Rptr. 8, 661 P.2d 1088].)

"While in general arbitration is a highly favored means of settling disputes [citation], it is beyond dispute a trial court may deny a petition to compel arbitration if it finds the moving party has waived that right. [Citations.] [¶] '[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether [they] are supported by substantial evidence.' [Citation.] 'The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver. [Citations.]' [Citation.] 'There is no single test for waiver of the right to compel arbitration, but waiver may be found where the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct. [Citations.]' [Citation.] While engaging in litigation of the matter may be inconsistent with an intent to invoke arbitration, 'the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration.' " (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1363–1364 [96 Cal.Rptr.2d 295]; see §§ 1281, 1281.2.)

### II

### *Analysis*

Augusta contends we must reverse the order because he did not unreasonably delay, his litigation conduct was not wholly inconsistent with an intent to arbitrate, and in any event, his conduct did not prejudice Keehn. We conclude the evidence amply supports the court's ruling.

# A

## *Unreasonable Delay*

■  A petition to compel arbitration "should be brought within a reasonable time." (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 17 [111 Cal.Rptr.3d 335].) In *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553 [94 Cal.Rptr.2d 201], the Court of Appeal found waiver and reversed an order granting a defendant's petition to compel arbitration, in part because of unreasonable delay. The defendant filed the petition to compel nearly four months after the complaint was filed. The court pointed out that the defendant knew about the arbitration provision when the complaint was filed, but "has nevertheless failed to offer any explanation for its decision to defer for three months its demand for arbitration." (*Id.* at p. 557; see *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 996 [72 Cal.Rptr.2d 43] [10-month delay unreasonable]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228 [249 Cal.Rptr. 544] [five-and-a-half-month delay unreasonable].)

We cannot fault the court's finding of unreasonable delay. Augusta knew about the arbitration clause when he filed his original complaint, and yet he delayed in petitioning to compel arbitration for six and a half months. When the court asked Augusta's counsel at the hearing about the delay, he had no reasonable explanation. Rather, he attempted to blame Keehn for leading him to believe arbitration would occur without any action on his part. It was up to Augusta, however, to protect his own rights.

■  Augusta notes Keehn's answer to the FAC included an affirmative defense that the action was subject to arbitration. An arbitration clause, however, is not self-executing. "Mere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must . . . timely raise the defense and take affirmative steps to implement the process . . . ." (*Sobremonte v. Superior Court, supra*, 61 Cal.App.4th at p. 997.) To any extent Augusta relied on the affirmative defense, he did so at his peril.

Keehn's claim in his case management conference statement that he intended to enforce the arbitration clause is immaterial for the same reason. Further, the statement is dated June 4, more than five and a half months after Augusta filed his original complaint. When Augusta learned at the June 19 case management conference that Keehn did not intend to seek arbitration, he delayed until July 2 in filing his petition, during which time he continued to pursue discovery from Keehn, as discussed below. Also, Keehn's filing of a motion for sanctions under section 128.7 and his demurrer to the FAC did not hinder Augusta from demanding arbitration as a statute of limitations defense

is an arbitrable issue. (*Zamora v. Lehman, supra,* 186 Cal.App.4th at p. 17.) There was no need for him to undertake discovery in superior court before demanding arbitration.

## B

### Intent Not to Arbitrate

Augusta's delay connotes an intent not to arbitrate. Further, his conduct during the delay period supports a finding he lacked an intent to arbitrate. The arbitration clause prohibited formal discovery,[4] yet Augusta propounded to Keehn form interrogatories, special interrogatories, requests for admissions and a demand for production of documents. Dissatisfied with Keehn's original responses, Augusta pressed the matter by sending them a lengthy and detailed meet and confer letter citing provisions of the Civil Discovery Act (§ 2016.010 et seq.) and threatening motions to compel and sanctions if he did not provide supplemental responses within five days. When Keehn did not comply, Augusta persisted. He availed himself of the court's ex parte process in an effort to reschedule the hearing on Keehn's demurrer to allow him to bring motions to compel. He then filed two motions to compel and sought a total of $12,260 in sanctions for violations of discovery rules. Additionally, he scheduled a two-day deposition of Keehn.

The record belies Augusta's assertion his formal discovery does not indicate an intent not to arbitrate, as it was merely defensive in nature to address Keehn's motion for sanctions and demurrer to the FAC. The court denied the motion for sanctions on April 17 and overruled the demurrer on May 29, yet Augusta persisted in demanding supplemental discovery responses from Keehn, 20 days after he filed his petition to compel arbitration on July 2.

Further, Augusta's assertion his discovery was directed solely at the issues raised by Keehn in his motion for sanctions and demurrer is untrue. Augusta also sought information on Keehn's defense to the FAC on the *merits*. For

---

[4] The clause provides: "Arbitration is a form of dispute resolution which does not involve a jury and has only a very limited scope of appellate review. Accordingly, by signing this letter you will be giving up your right to have any issue or controversy with the firm decided by a jury, to conduct formal discovery prior to the arbitration hearing, and, to a large extent, your right to have the arbitrator's decision reviewed by a court of appeal." (Some capitalization omitted.)

instance, special interrogatories asked Keehn to specify such things as how many bankruptcy clients he had advised on the statute of limitations applicable to legal malpractice actions, and whether he contended the summary judgment in the underlying malpractice action was in error. These issues do not concern whether the statute of limitations had expired in the instant action.

This type of discovery signifies the intent to litigate rather than to arbitrate. Had the discovery pertained only to Keehn's motion for sanctions and demurrer, Augusta surely would not have persisted in obtaining supplemental responses long after the court denied Keehn any relief on his statute of limitations defense. Further, Augusta litigated Keehn's motion for sanctions and demurrer in court rather than demanding arbitration, even though the statute of limitations dispute was arbitrable. A different ruling on the intent issue would have been against the great weight of the evidence.

## C

### *Prejudice*

Despite the delay in seeking arbitration and lack of intent to arbitrate, the conduct of the party demanding arbitration must have prejudiced the opposing party.[5] "In California, whether or not litigation results in prejudice also is critical in waiver determinations." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 [8 Cal.Rptr.3d 517, 82 P.3d 727].) "The moving party's mere participation in litigation is not enough; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 212 [69 Cal.Rptr.2d 79] (*Davis*).) "[C]ourts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence . . . ." (*St. Agnes Medical Center v. PacifiCare of California*, at p. 1204; see *Kaneko Ford Design v. Citipark, Inc., supra*, 202 Cal.App.3d at p. 1228 [prejudice found when petitioning party learned other side's legal strategies].)

Augusta contends Keehn was not prejudiced because he revealed no facts or theories in his discovery responses that he had not already divulged in his

---

[5] We asked the parties for supplemental briefing on the prejudice issue, and we have taken their responses into consideration.

motion for monetary sanctions and demurrer. We conclude, however, that substantial evidence supports the court's finding Keehn's supplemental discovery responses were sufficiently prejudicial to warrant the denial of arbitration. In his motion for sanctions and demurrer, Keehn argued this action was time-barred because the sole instance of alleged malpractice occurred in July 2002, and the statute of limitations was not tolled by his continued representation of Augusta until 2008 since that representation was solely for the bankruptcy matter. Augusta's discovery, however, was aimed at the merits of this case as well as at Keehn's statute of limitations defense, and some of Keehn's responses revealed new information.

For instance, in his amended response to request for admission No. 4, Keehn admitted he understood Augusta intended to rely on his July 3, 2002 letter advising that the bankruptcy proceeding automatically extended the limitations period for bringing a malpractice action against his attorneys in the securities litigation, although Keehn expected Augusta to "take the issue up with John D. Pickett, Esq. for his independent evaluation as potential legal malpractice counsel for . . . Augusta." Augusta argues Keehn made the same admission in his motion for monetary sanctions. Augusta cites to a page from Keehn's motion for sanctions memorandum of points and authorities, which is not evidence. It discusses Keehn's July 3, 2002 letter, but it does not include any admission Keehn understood Augusta would rely on it. Augusta also cites to a page from Keehn's first declaration in support of his motion for sanctions. It discusses the July 3, 2002 letter, but it does not make any admission he intended Augusta to rely on it.

In his amended response to request for admission No. 5, Keehn admitted his July 3, 2002 letter was within the scope of his representation of Augusta. Augusta asserts Keehn had already disclosed the "substance" of this response in his motion for sanctions declaration. Keehn's declaration, however, contains no such admission. It merely states he wrote the letter in response to a request from Augusta's then malpractice attorney. The gist of the declaration was that malpractice matters were *not* within the scope of Keehn's representation of Augusta. The declaration states Keehn's representation "was never expanded beyond that of bankruptcy counsel." Keehn claims that other amended responses to the requests for admissions also show prejudice, but we need not belabor the point. Keehn also points out that under section 2033.410, subdivision (a), admissions are generally binding.

To show some prejudice the evidence need only show the party petitioning for arbitration "used the discovery processes of the court to gain information about [the other side's] case which [the petitioning party] could not have gained in arbitration." (*Davis, supra,* 59 Cal.App.4th 205, 215.) The evidence need not show the disclosures prejudiced the opposing party "in a specific,

identifiable way." (*Berman v. Health Net, supra*, 80 Cal.App.4th at p. 1366.) The evidence adequately satisfies the test.

Additionally, Augusta prejudiced Keehn by obtaining discovery from him and then refusing to reciprocate. In an analogous situation, the *Davis* court explained: "The vice involved here, whether characterized as 'unreasonable delay,' 'bad faith misconduct,' 'gamesmanship' or 'unilateral discovery' . . . is that defendants used the discovery processes of the court to gain information about plaintiff's case which defendants could not have gained in arbitration. After obtaining discovery from plaintiff by court processes, defendants then belatedly sought to change the game to arbitration, where plaintiff would not have equivalent discovery rights. . . . Here, the trial court could reasonably find the discovery conducted was not equivalent for both sides and would work an unfair advantage for defendants if arbitration were ordered. These facts support the trial court's finding of waiver." (*Davis, supra*, 59 Cal.App.4th at p. 215, citation omitted.)

Augusta's reliance on *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 [98 Cal.Rptr.2d 836] (*Groom*), and *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 [92 Cal.Rptr.3d 153] (*Roman*), is misplaced. In *Groom*, the court found no prejudice when the party opposing an arbitration demand had not answered discovery requests. The court noted, "Groom has conceded that she did not suffer prejudice from discovery requests to which she did not respond." (*Groom*, at p. 1196.) In *Roman*, the court found no prejudice to the plaintiff when the defendant petitioned to compel arbitration within two months of the complaint's filing and no formal substantive discovery responses had been served by either side. Further, the defendant's discovery requests were authorized under the American Arbitration Association's rules, and thus "the discovery sought (although not received) did not seek to take advantage of discovery tools unavailable in arbitration." (*Roman*, at p. 1479.) Here, Augusta used the court's processes to obtain formal discovery not available in arbitration, and then he refused to reciprocate in discovery. It appears that the court could have found bad faith on Augusta's part.

We acknowledge the public policy in favor of arbitration, but the circumstances here, considered as a whole, merit a finding of prejudice and waiver. "[W]e cannot conclude the record before the trial court compelled a finding of nonwaiver as a matter of law." (*Berman v. Health Net, supra*, 80 Cal.App.4th at pp. 1366–1367.)[6]

---

[6] Augusta cites opinions in which the courts found waiver based on more substantial discovery than he propounded to Keehn. We need not discuss them because our task is to decide whether the evidence adduced here supports a finding of waiver.

## DISPOSITION

The order is affirmed. Keehn is entitled to costs on appeal.

Nares, J., and Irion, J., concurred.