Filed 1/30/14  Boschetti v. Pacific  Bay Investments CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GIAMPAOLO BOSCHETTI,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PACIFIC BAY INVESTMENTS, INC., et al.,<br><br>        Defendants and Appellants. | A134195<br><br>(San Francisco County<br>Super. Ct. No. CGC09493195) |

Defendants Pacific Bay Investments, Inc. (Pacific Bay) and Adam Sparks appeal orders of the trial court denying their petition to compel arbitration and appointing a discovery referee.  We shall affirm the order denying defendants' petition to compel arbitration, and dismiss the appeal from the order appointing a discovery referee.

## I.  BACKGROUND

Plaintiff Giampaolo Boschetti,[1] individually and as managing member of Pabo Segundo, LLC and Pabo, LLC, brought his complaint against defendants[2] in October 2009, and amended it shortly thereafter.  The first amended complaint alleged, inter alia,

---

[1] In the record, Giampaolo Boschetti's name is spelled variously as Giampaulo, Giampaolo, G. Paul, or Paul.

[2] The named defendants were Pacific Bay; Adam Sparks, individually and as trustee of the Adam Sparks Revocable Trust dated January 15, 2000; Singing Cowboy, Inc.; Texas Rendezvous, LP; Lonesome Cowboy, LP; Sparks & Boschetti, LLC; Hale Akahai, LLC; Triple Horseshoe, LP; Hilo Center, LLC; Kiyomitex, LLC; Double Horseshoe, LLC; and PAC South Investments, LLC (Pacsouth).

1

that plaintiff and his business partner, defendant Adam Sparks, owned various commercial real properties either directly or through membership in the defendant's limited liability companies and partnerships, that defendants provided real property management services, and that Pacific Bay had paid itself improper distributions in violation of its fiduciary duty to plaintiff. Plaintiff sought, among other things, for defendants to provide access to books and records pertaining to their internal affairs and the management and operation of the parties' "Jointly Owned Properties."[3] The first amended complaint alleged six causes of action: (1) a cause of action against Pacific Bay for preliminary and permanent injunction; (2) a cause of action against all defendants for preliminary and permanent injunction; (3) & (4) causes of action against Pacific Bay for breach of fiduciary duty and unfair competition (Bus. & Prof. Code, §§ 10130 & 10131); (5) a cause of action against Sparks, the Sparks Family Trust, Sparks & Boschetti, Hale Akahai, and Hilo Center for enforcement duties under Corporations Code sections 17453 and 17106, subdivision (f); and (6) declaratory relief against Sparks and Pacific Bay with respect to Boschetti's obligation to pay Sparks and Pacific Bay an " 'equity bonus' " as a result of the sale of three properties in Honolulu (located at 455 Nahua Avenue, 928 Nuuanu Avenue, and 438 Kuamoo Street).

---

[3] The "Jointly Owned Properties" were the Woodlake Shopping Center at 3065 N. Josey Lane, Carrollton, Texas; the Meadowcreek Shopping Center at 800–999 W. Centerville, Garland, Texas; the Sevilla Apartments at 1455 North Perry Road in Carrollton, Texas; 4.913 acres of vacant land at 1451 North Perry, Carrollton, Texas; the Four Corners Shopping Center at 1804 N. Velasco, Angleton, Texas; the Braeswood Atrium Apartments at 8800 S. Braeswood, Houston, Texas; the Port of Hilo at 60 Kuhio Street, Hilo, Hawaii; the Hilo Shopping Center at 1221–1263 Kilauea Avenue and 72 Keukuanaoa Street, Hilo, Hawaii; the Hilo Val Hala Apartments at 120 Puueo Street, Hilo, Hawaii; the Kam IV Apartments at 1531 Kam IV Road, Honolulu, Hawaii; 1144 S. Kihei Road, Kihei, Hawaii; a vacant parcel at 2145 S. Kihei Road, Kihei, Hawaii; 1745 So. Kihei Road, Kihei, Hawaii; the Ecodyne Property at 8203 Market Street, Houston, Texas; the Tall Pines Shopping Center at 907–911 E. Pinecrest Drive, Marshall, Texas; and the Broadmoor Shopping Village at 930–950 West Centerville Road, Garland, Texas. Plaintiff alleged that some of these properties—including the Kam IV Apartments at 1531 Kam IV Road in Honolulu—were held by Boschetti and the Sparks Family Trust as tenants in common.

Sparks filed a petition to compel arbitration based on two 2003 operating agreements between Sparks and Boschetti for Sparks and Boschetti, LLC and Hale Akahai, LLC which provided for arbitration of disputes "with respect to any matter requiring the consent or mutual agreement" of the parties. The trial court denied the motion on the ground that the dispute did not involve matters requiring the parties' mutual agreement or consent.

Sparks and Pacific Bay cross-complained against Boschetti in March 2010, seeking recovery of commissions, asset management fees, and expense reimbursements based on the terms of three agreements: an "Agreement for Partnership" dated November 8, 2000; an "oral Modified Partnership Agreement" allegedly entered into in or around May 2006; and a handwritten "Master Partnership Agreement" allegedly initialed by Boschetti in or around January 2007. The claims arose in part out of defendants' management of real property that was or had been jointly owned by Sparks and Boschetti, either by themselves or through various other partnerships and entities.[4]

Sparks and Pacific Bay proceeded with discovery against Boschetti. In July 2010, Sparks propounded a set of 52 special interrogatories, Pacific Bay propounded a set of 51 special interrogatories, Sparks propounded a set of 75 requests for admission, and Sparks

---

[4] The properties were listed as: Braeswood Atrium at 8800 S. Braeswood, Houston, Texas; Broadmoor Shopping Village at 930–950 West Centerville Road, Garland, Texas; Four Corners located at 1804 N. Velasco, Angleton, Texas; Hilo Shopping Center located at 1221–1263 Kilauea Avenue, Hilo, Hawaii; Hilo Val Hala Apartments, located at 120 Puueo Street, Hilo, Hawaii; the Kam IV Apartments, located at 1531 Kam IV Road, Honolulu, Hawaii; 1144 S. Kihei Road, Kihei, Hawaii; 1745 S. Kihei, Kihei, Hawaii; 2145 S. Kihei, Kihei, Hawaii; "Kmart" located at 1100 McCann Road, Longview, Texas; "Kmart Vacant Land," 4,112 acres located in Longview, Texas; 8203 Market Street, Houston, Texas; "Meadowcreek Shopping Center" located at 803–999 West Centerville, Garland, Texas; "Port of Hilo," located at 60 Kuhio Street, Hilo, Hawaii; "Sevilla," located at 1455 N. Perry Road, Carrollton, Texas; "Sevilla Vacant Land," 4.9153 acres adjacent to 1455 N. Perry Road, Carrollton, Texas; "Tall Pines Shopping Center," at 907–911 E. Pine Crest Drive, Marshall, Texas; "Woodlake Shopping Center," at 3065 North Josey Lane, Carrollton, Texas; "Essex House," located at 455 Nahua Avenue, Honolulu, Hawaii; "Hawaii Times," located at 928 Nuuanu Avenue, Honolulu, Hawaii; and 483 Kuamoo Street, Honolulu, Hawaii.

and Pacific Bay propounded separate sets of form interrogatories. Plaintiff provided discovery responses. Sparks and Pacific Bay moved to compel further responses to their discovery requests, and the trial court granted their motion on November 10, 2010.

Defendants took Boschetti's deposition over three days in April 2011. Defendants' counsel questioned Boschetti about a 2002 Tenancy-in-Common Agreement (the 2002 TIC Agreement), asking whether he had read the agreement before signing it, whether the agreement entitled Pacific Bay to a five percent commission, and whether the agreement pertained to some of the properties at issue in the cross-complaint.

Defendants moved for summary judgment or summary adjudication on June 24, 2011. They relied in part on the allegedly undisputed facts that Boschetti and Sparks executed the 2002 TIC Agreement covering jointly owned properties, three of which they alleged were at issue in this case,[5] and that under the 2002 TIC Agreement Sparks was appointed manager of the properties and Pacific Bay was entitled to a five percent commission on the sale of certain properties.

On July 15, 2011, defendants moved to set the matter for trial, asserting that the case was "at issue and ready for a trial date," that the parties had "substantially completed copious discovery required by the nature of this case, both parties have taken or noticed depositions for the individuals named as parties, and Defendants have a Motion for Summary Adjudication hearing set in [the trial] court."

After seeking and securing leave from the court, plaintiff filed a second amended complaint on September 6, 2011. In addition to the six causes of action alleged in the first amended complaint, the second amended complaint alleged 16 new causes of action. The new causes of action were claims against Kiyomitex and Sparks Family Trust for breach of contract, breach of the implied duty of good faith and fair dealing, and conversion based on a 2005 tenancy in common agreement between Kiyomitex, LLC and

---

[5] The three properties defendants mentioned in this context were: "438 Kuamoo Street ('438 Kuamoo'), 928 Nuuanu Avenue ('Hawaii Times'), and 455 Nahua Avenue ('Essex House')." The first amended complaint and the cross-complaint included allegations about these properties.

4

Pabo, LLC for the Sevilla Apartments; negligent supervision against Kiyomitex and Sparks Family Trust based on their alleged inadequate supervision of defendant Pacsouth, the management company for the Sevilla Apartments; breach of contract, breach of the implied duty of good faith and fair dealing, and conversion against Double Horseshoe and Sparks Family Trust based on a 2006 tenancy-in-common agreement between Double Horseshoe, LLC and Pabo Segunda, LLC for the Meadowcreek and Woodlake Shopping Centers; negligent supervision against Double Horseshoe and Sparks Family Trust in connection with the Meadowcreek and Woodlake Shopping Centers; breach of contract against the Sparks Family Trust and breach of the implied duty of good faith and fair dealing and conversion against Sparks and the Sparks Family Trust in connection with a 2006 tenancy-in-common agreement among the Adam Sparks Family Revocable Trust, Boschetti, and Pacific Bay for the Broadmoor Village Shopping Center;  negligent supervision against Sparks and the Sparks Family Trust in connection with the Broadmoor Shopping Center; conversion and breach of fiduciary duty against Pacsouth, the management company for the Sevilla Apartments; conversion against Pacific Bay and Sparks in connection with the Ecodyne Building, located at 8203 Market Street, Houston, Texas; and against all defendants for an accounting.

Sparks then filed a second motion to compel arbitration, seeking to compel plaintiff to submit his claims to arbitration pursuant to the 2002 TIC Agreement.  The trial court denied the motion, finding that "[t]he new claims alleged in the Second Amended Complaint are not within the scope of the 2002 agreement and, even if they were, Defendants waived their right to arbitrate those claims by their own litigation activities in this case and their delay in bringing this motion."

In the meantime, plaintiff had filed a motion to appoint a discovery referee pursuant to Code of Civil Procedure sections 639 and 640,[6] which the trial court granted, naming a referee for all discovery purposes.

---

[6] All undesignated statutory references are to the Code of Civil Procedure.

5

## II. DISCUSSION

### A. Denial of Motion to Compel Arbitration

#### 1. *The 2002 TIC Agreement*

Sparks contends the trial court erred in denying his petition to compel arbitration pursuant to the 2002 TIC Agreement. The preamble to the 2002 TIC Agreement provided: "THIS TENANCY-IN-COMMON AGREEMENT (this 'Agreement') is made and entered into, for purposes of reference only, this 1st day of January, 2002, by and among G. Paul Boschetti, a single man (hereinafter referred to as 'GPB'), and Adams Sparks and Kiyomi Sparks, Trustees of the Adam Sparks Family Revocable Trust Dated January 15, 2000 (hereinafter referred to as 'AS'), each as a tenant-in-common (referred to individually as a 'Co-Owner' and collectively as the 'Co-Owners'), with respect to all the improved real Properties described in Exhibit 'A' attached hereto, as well as those acquired by them, as tenants in common, in the future (the 'Property' or 'Properties')." Exhibit A to the agreement listed five properties of which the two parties were co-owners: 928 Nuuanu Avenue, Honolulu, Hawaii; 451 Nahua Avenue, Honolulu, Hawaii; 1531 Kamehameha IV Road, Honolulu, Hawaii; 1745 South Kihei Road, Kihei, Hawaii; and 438 Kuamoo Street, Honolulu, Hawaii. The first amended complaint and/or the cross-complaint include allegations about defendants' management of most or all of these properties.[7] The remaining properties at issue in the first amended complaint and the cross-complaint are not listed in the 2002 TIC Agreement. Defendants contend, however, that some of them fall within the scope of the agreement because they are "properties . . . acquired by [the parties], as tenants in common, in the future."

The 2002 TIC Agreement included clauses requiring the parties to submit disputes to mediation, and, if mediation was unsuccessful, "[a]ny controversy or claim in law or equity arising out of or relating to this Agreement, or the making, performance, or interpretation thereof, other than disputes involving the collection or enforcement of any

---

[7] The first amended complaint and cross-complaint refer to a property at 455 Nahua Avenue. It appears this may be the same property described in Exhibit A to the 2002 TIC agreement as 451 Nahua Avenue.

6

costs, expenses, or other amounts owed by any Co-Owner under Sections 6 and 7(a) [relating to operation and management of the properties and failure to pay costs and expenses] . . . shall be resolved by neutral, binding arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing . . . The parties shall have the right to discovery in accordance with California Code of Civil Procedure Section 1283.05. [¶] NOTICE:  BY EXECUTION OF THIS AGREEMENT, THE PARTIES ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS 'ARBITRATION OF DISPUTES FOLLOWING MEDIATION' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND THE PARTIES ARE GIVING UP ANY RIGHTS THEY MIGHT OTHERWISE POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL; PROVIDED, HOWEVER, THE PARTIES ARE NOT GIVING UP THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL OF THE DECISION OF THE ARBITRATOR(S). . . ."

2.  *Waiver of Right to Arbitrate Under 2002 TIC Agreement*

" 'While in general arbitration is a highly favored means of settling disputes [citation], it is beyond dispute a trial court may deny a petition to compel arbitration if it finds the moving party has waived that right.  [Citations.]  [¶] "[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether [they] are supported by substantial evidence." [Citation.]  "The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver.  [Citations.]" ' " (*Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337.)  Factors a court properly considers in determining waiver include:  " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim

7

without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. [Citations.]' [Citation.]" (*Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 (*Sobremonte*); see also *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

Applying these standards, we conclude substantial evidence supports the trial court's determination that defendants waived any right they might have had to arbitrate this dispute pursuant to the 2002 TIC Agreement. The " 'litigation machinery' " had been substantially invoked and the parties were " 'well into the preparation of the lawsuit.' " (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 992.) The complaint and first amended complaint were filed in October 2009, and the petition to compel arbitration under the 2002 TIC Agreement was not filed until October 6, 2011, two years later. In the meantime, defendants carried out significant discovery, including taking Boschetti's deposition at which they questioned him about the 2002 TIC Agreement. This deposition might not have been available in an arbitration: the arbitration agreement provided that the parties would have the right to discovery in accordance with section 1283.05, which does not allow depositions to be taken unless the arbitrator grants leave. (§ 1283.05, subd. (e).) Defendants cross-complained without seeking a stay of the litigation. After carrying out discovery and filing their cross-complaint, defendants moved for summary judgment or summary adjudication, relying in part on the 2002 TIC Agreement and taking the position that it covered some of the properties at issue in this case. They moved to set the matter for trial, asserting the case was "at issue and ready for a trial date." During the two years this case was litigated below, plaintiffs lost the benefit of any efficiencies that might have been available through arbitration. (See *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 19.) This record amply supports the trial court's ruling.

Defendants contend, however, that the second amended complaint so expanded the issues in the litigation that it "revived" their right to seek arbitration. (See *Keating v.*

8

*Superior Court* (1982) 31 Cal.3d 584, 607, reversed on another ground in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [where amended complaints "considerably expanded" scope of pleadings, trial court could properly find lack of waiver of right to arbitrate interrelated claims in original complaints].)  According to defendants, the first amended complaint contained no allegations regarding tenancy-in-common properties, so they could not assert their right to arbitrate under the 2002 TIC agreement, which recites that it is made "with respect to all improved real Properties described in Exhibit 'A' attached hereto, as well as those acquired by them, as tenants in common, in the future." Defendants are incorrect.  As we have noted, both the first amended complaint and the cross-complaint included allegations about defendants' management of most or all of the properties listed in the 2002 TIC Agreement.  The first amended complaint alleged that Boschetti and the Sparks Family Trust owned the 1531 Kamehameha IV Road and other properties as tenants in common.  Moreover, all the new causes of action in the second amended complaint arise out of defendants' management of properties already at issue by virtue of both the first amended complaint and defendants' own cross-complaint.  Even in light of the new allegations of the second amended complaint, the trial court reasonably concluded that defendants had waived any right they had to arbitrate this case under the 2002 TIC Agreement.

Because we reach this conclusion, we need not address defendants' further contentions that the trial court erred in deciding issues properly reserved for the arbitrator and that the scope of the arbitration agreement included the claims in this case.  (See *Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 234 [existence of waiver based on litigation conduct is for courts to decide].)

**B.  Appointment of Discovery Referee**

The trial court appointed a discovery referee pursuant to section 639, and defendants have purported to appeal from this order.  An order appointing a referee is interlocutory and not appealable.  (*Providence Baptist Church v. Superior Ct.* (1952) 40 Cal.2d 55, 59; § 904.1, subd. (a)(1).)  Plaintiffs have not asked us to treat their purported

appeal from this order as a petition for writ of mandate, and we decline to do so. We shall therefore dismiss the appeal from the order appointing a discovery referee.[8]

### III.    DISPOSITION

The order denying the petition to compel arbitration is affirmed. The appeal from the order appointing a discovery referee is dismissed.


_____
Rivera, J.


We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

---

[8] Plaintiffs have made a motion for sanctions on the ground this appeal is frivolous and taken for purposes of delay. The motion is denied.