Filed 2/20/15  Sachs v. GP/T Holdings CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL M. SACHS, as Trustee, etc.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GP/T HOLDINGS, LLC et al.,<br><br>Defendants and Appellants. | B254289<br><br>(Los Angeles County<br>Super. Ct. No. BS141237 ) |

APPEAL from orders of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Amir M. Kahana, Amir M. Kahana and Avi M. Attal, for Defendants and Appellants.

Locke Lord, Jon L. Rewinski and Christopher Lee, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendants, GP/T Holdings, LLC and TSC Acquisition Corporation, appeal from orders denying their motions to compel arbitration. Plaintiff, Michael M. Sachs, as Trustee of Westrec Properties, Inc. & Affiliated Companies 401(k) Plan filed petitions to compel defendants to produce certain records for his inspection. Plaintiff alleged he had an economic interest under the Corporations Code to view these records. Defendants moved to compel arbitration under an operating agreement's arbitration clause signed by GP/T Holdings, LLC. Defendants' motions. It found the operating agreement's arbitration clause did not apply to the subject matter raised by plaintiff's mandate petitions. Even if it did, the trial court found defendants had waived their arbitration rights. Defendants contend the trial court erred. They assert the arbitration agreement applied to plaintiff's claims. They also maintain they did not waive their arbitration rights. We affirm the orders because defendants waived their right to arbitrate.

# II. BACKGROUND

## A. Plaintiff's Mandate Petitions

### 1. Introduction

There are two mandate petitions in this case, both filed on January 14, 2013. Plaintiff's first mandate petition is brought against GP/T Holdings, LLC and Nathan and Matthew Johnson (the Johnsons). The Johnsons are not parties to this appeal. Plaintiff's second mandate petition was filed against TSC Acquisition Corporation only. The Johnsons are not named in the second mandate petition. The two mandate petitions' allegations parallel one another. We will set forth the allegations of the first petition in some detail and then, without repeating the common allegations, briefly summarize the second petition.

2

## 2. The First Petition

On January 14, 2013, plaintiff filed his verified mandate petition to compel delivery, inspection and copying of records against GP/T Holdings, LLC and the Johnsons. Plaintiff alleges the following. The Johnsons were managers of GP/T Holdings, LLC. GP/T Holdings, LLC is a limited liability company formed to invest in Telscape Communications, Incorporated. GP/T Holdings, LLC owned stock in TSC Acquisition Corporation. The purpose of TSC Acquisition Corporation was to purchase all the outstanding Telscape Communications, Incorporated stock. GP/T Holdings, LLC is a California company. TSC Acquisition Corporation is a Delaware corporation with its principal executive offices in California.

On March 30, 2006, plaintiff became a member of GP/T Holdings, LLC by investing $1,000,000. On May 17, 2006, TSC Acquisition Corporation acquired Telscape Communications, Incorporated. Plaintiff's investment became 60,400 shares of the series A preferred stock of TSC Acquisition Corporation. On August 29, 2007, plaintiff, as an individual and trustee of his trust, wired an additional $1,000,000 to GP/T Holdings, LLC as part of a $6,000,000 "capital raise" suggested by the Johnsons. The purpose was to purchase $3,000,000 of series A preferred stock of TSC Acquisition Corporation. The series B preferred stock of TSC Acquisition Corporation would be sold to raise an additional $3,000,000. The purpose was to invest further in Telscape Communications, Incorporated. The capital raise documents advised that plaintiff and his trust would be issued series A preferred stock of TSC Acquisition Corporation within 90 days from the receipt of the funds. Plaintiff and his trust never received the stock. Over the following six years, GP/T Holdings, LLC provided insufficient and incomplete information to plaintiff regarding its operations, finances and affairs.

On June 11, 2012, after a series of communications, plaintiff's attorneys delivered to GP/T Holdings, LLC a written demand to inspect and copy its books, records and documents. On June 21, 2012, the attorneys of GP/T Holdings, LLC advised that they

3

would produce the documents, but did not. On November 26, 2012, having found the response of GP/T Holdings, LLC inadequate, plaintiff delivered a formal request demanding a copy of the information required under Corporations Code section 17058, subdivision (a). Plaintiff also requested a copy of any written operating agreement. Plaintiff also requested these records be available for copying and inspection during reasonable business hours. These documents were not made available. On December 4, 2012, plaintiff's counsel sent an e-mail to GP/T Holdings, LLC's attorney. Plaintiff requested the demanded documents be sent to his office. The attorney for GP/T Holdings, LLC sent the Telscape Communications, Incorporated financial statements to plaintiff. The attorney for GP/T Holdings, LLC also sent the consolidated tax returns of TSC Acquisition Corporation and promised to send additional information when it became available. Plaintiff's attorney responded on December 5, 2012, stating the documents were an insufficient response to November 26, 2012 demand. On December 26, 2012, plaintiff's attorney sent another e-mail to GP/T Holdings, LLC's attorney indicating that none of the sent documents was responsive to the November 26, 2012 demand. Plaintiff's attorney indicated a mandate petition would be filed unless a significant number of documents were delivered. To date, no response came.

Plaintiff alleges GP/T Holdings, LLC had a duty to deliver information and permit plaintiff and his attorneys to inspect and copy records under Corporations Code section 17058, subdivision (a). Plaintiff seeks a writ of mandate ordering GP/T Holdings, LLC to deliver the required information and make it available for inspection and for copying the records it is required to maintain. Plaintiff also requests costs of suit, attorney's fees, and other further relief.

### 3. The Second Petition

Also on January 14, 2013, the second mandate petition to compel inspection and copying of records against TSC Acquisition Corporation was filed. Plaintiff alleges the following. He is a GP/T Holdings, LLC shareholder and holds shares of preferred stock.

4

GP/T Holdings, LLC owns more than half of the outstanding voting shares of TSC Acquisition Corporation. Plaintiff, as alleged previously, invested an additional $1,000,000 with GP/T holdings, LLC for the purpose of purchasing additional series A preferred TSC Acquisition Corporation stock, but never received it. Plaintiff similarly alleges that after six years of owning preferred TSC Acquisition Corporation stock, it provided insufficient and incomplete information on its operations, finances and corporate affairs. Plaintiff declined to convert his Series A preferred stock to Series C preferred stock and continued to request access to the earlier demand for books, records and documents. Like his allegations against GP/T Holdings, LLC concerning the events of November 26 to December 26, 2012, plaintiff complained of the inadequacy of the responses. Plaintiff alleges he has inspection rights as a shareholder and TSC Acquisition Corporation must keep records and produce documents under Corporations Code sections 1500, 1501, and 1600. Plaintiff seeks issuance of a writ of mandate directing TSC Acquisition Corporation to permit inspection, copying and compiling extracts of records and accounting books. Plaintiff also seeks costs of suit and further relief.

### B. Litigation Prior to Motions to Compel Arbitration

On February 19, 2013, GP/T Holdings, LLC moved to quash the petition for writ of mandate. GP/T Holdings, LLC argued plaintiff's service of the petition was insufficient. Plaintiff later filed additional proofs of service of the mandate petitions on April 2, 2013.

On May 15, 2013, GP/T Holdings, LLC filed a demurrer and motion to strike. GP/T Holdings, LLC demurred as to plaintiff's cause of action against the Johnsons. GP/T Holdings, LLC argued the Johnsons were not personally liable under the Corporations Code. Plaintiff opposed the demurrer. On July 30, 2013, the trial court overruled the demurrer. It found liability was not at issue, but rather whether the Johnsons were subject to Corporations Code section 17106.

5

GP/T Holdings, LLC also moved to strike certain portions of the petition as being irrelevant. Plaintiff opposed the motion. On July 30, 2013, the motion to strike was denied. The trial court ruled the statements were relevant and not improper or false. On August 9, 2013, GP/T Holdings, LLC filed its verified answer to the mandate petition.

On May 15, 2013, TSC Acquisition Corporation filed its own special demurrer. TSC Acquisition Corporation argued plaintiff failed to join Telscape Communications, Incorporated as a necessary and indispensable party. Plaintiff opposed the demurrer. On July 30, 2013, the demurrer was overruled. The trial court ruled TSC Acquisition Corporation failed to show Telscape Communications, Incorporated was indispensable or necessary to the action. TSC Acquisition Corporation filed its verified answer on August 9, 2013. Neither defendant mentioned a right to arbitration in any of these filings. The trial court set the hearing on the two mandate petitions for March 6, 2014.

## C. Defendants' Motions to Compel Arbitration and the Responses Thereto

### 1. The Motion of GP/T Holdings, LLC

On September 12, 2013, GP/T Holdings, LLC moved to compel arbitration. GP/T Holdings, LLC argued: a written arbitration agreement existed; the right to compel arbitration was not waived; there were no grounds to revoke the agreements; and there is no pending litigation rendering the arbitration unnecessary or duplicative.

As to the existence of an agreement to arbitrate, GP/T Holdings, LLC cites to its operating agreement's arbitration clause. It is undisputed plaintiff and GP/T Holdings, LLC are parties to its operating agreement dated March 21, 2006. Section 16.1 of the GP/T Holdings, LLC operating agreement provides, "In the event of a dispute among or between Members regarding this Agreement or the subject matters hereof, the Members shall submit such dispute to binding arbitration before a single arbiter conducted in the city of Los Angeles pursuant to the commercial arbitration rules of the American Arbitration Association." GP/T Holdings, LLC argued the mandate petition concerned

6

matters pertaining to the operating agreement and plaintiff's initial investment in the enterprise.

Further, GP/T Holdings, LLC asserted no waiver of the right to arbitrate had occurred. As an explanation for the nine month delay in seeking to arbitrate their dispute, defense counsel stated he was unaware of the arbitration clause until it was pointed out to him. Defense counsel declared, "It was not until after July, 2013 when [GP/T Holdings, LLC's] former corporate counsel sent [TSC Acquisition Corporation] the Operating Agreement that we discovered the arbitration clause within the Amended and Restated Operating Agreement of GP/T Holdings, LLC." GP/T Holdings, LLC maintained it originally moved to dismiss plaintiff's petition because he was not a member of the enterprise and thus lacked standing to compel record inspection. Because plaintiff insisted he was a GP/T Holdings, LLC member, it invoked the terms of the operating agreement and moved to compel arbitration. GP/T Holdings, LLC filed an answer on August 9, 2013. The reason a demurrer and verified answers were filed, according to defense counsel was, "I tried to resolve this matter early on by filing demurrers, and then verified answers." The only discovery, according to defense counsel, was a document exchange.

On January 9, 2014, plaintiff filed his response to the motion to compel arbitration of GP/T Holdings, LLC. Plaintiff asserted: the operating agreement's arbitration clause did not apply to their dispute; he was asserting a statutory inspection right not involving the terms or construction of the operating agreement; and GP/T Holdings, LLC waived its right to arbitrate by actively engaged in litigation for nine months prior to filing its motion to compel arbitration. As evidence of waiver, plaintiff argued: GP/T Holdings, LLC moved to quash service of the mandate petition on the Johnsons; GP/T Holdings, LLC demurred and moved to strike all or portions of the mandate petition without referring to an arbitration right; GP/T Holdings, LLC filed an answer without referring to a right to arbitration; GP/T Holdings, LLC served discovery responses without referring to the arbitration clause; GP/T Holdings, LLC also propounded document requests; and the matter was set for trial on March 6, 2014. Plaintiff maintained he was prejudiced

7

because he was forced to litigate multiple substantive motions and discovery requests. Plaintiff also asserted his statutory rights could not be limited by an arbitration agreement.

On January 15, 2014, GP/T Holdings, LLC filed its reply. GP/T Holdings, LLC asserted the operating agreement provided members inspection rights, citing section 3.7 of the operating agreement, "'Membership Interest' means an ownership interest in the Company, which includes a Member's share of the profits and losses of the Company, a Member's right to receive distributions of the Company's assets, a Member's right (if any) to vote or participate in the management of the Company as permitted in this Agreement, and a Member's right to information concerning the business and affairs of the Company, as provided in this Agreement and under the [Beverly-Killea Limited Liability Company] Act." GP/T Holdings, LLC thus argued the arbitration agreement applied. GP/T Holdings, LLC also maintained that the procedural history of the litigation did not demonstrate it had waived its arbitration rights.

2. The Motion to Compel Arbitration of TSC Acquisition Corporation and the Responses Thereto

On September 12, 2013, TSC Acquisition Corporation moved to compel arbitration. TSC Acquisition Corporation noted GP/T Holdings, LLC was a shareholder. TSC Acquisition Corporation cited to the GP/T Holdings, LLC operating agreement signed by plaintiff. TSC Acquisition Corporation asserted the two mandate petitions were premised on plaintiff's initial investment in GP/T Holdings, LLC. Plaintiff allegedly invested money with GP/T Holdings, LLC, which then used that money to purchase TSC Acquisition Corporation shares. Thereafter, GP/T Holdings, LLC provided plaintiff with series A preferred stock in TSC Acquisition Corporation. Thus, TSC Acquisition Corporation argued the GP/T Holdings, LLC operating agreement and its arbitration clause applied to the action. TSC Acquisition Corporation also argued it did not waive any right to arbitration.

8

On January 9, 2014, plaintiff filed his opposition to the motion to compel arbitration of TSC Acquisition Corporation. Plaintiff argued: TSC Acquisition Corporation was not a party to the GP/T Holdings, LLC operating agreement; the operating agreement's arbitration clause did not apply because it pertained only to matters concerning the disputes of GP/T Holdings, LLC members; the disputes covered by the arbitration clause only concerned the operating agreement or subject matters thereof; and he had an express statutory right to inspect the corporation's books and records which could not be limited by an arbitration agreement. Plaintiff also argued TSC Acquisition Corporation waived its right to arbitration, citing their litigation conduct.

On January 15, 2014, TSC Acquisition Corporation filed its reply. TSC Acquisition Corporation argued: relying on the equitable estoppel doctrine, a nonsignatory to an arbitration agreement may still invoke arbitration; the two mandate petitions were inextricably intertwined; and the arbitration agreement did not limit plaintiff's inspection rights. TSC Acquisition Corporation also asserted plaintiff failed to demonstrate he was prejudiced by any delay.

D. Orders Denying Defendants' Motions to Compel Arbitration

On January 23, 2014, following a hearing on both motions, the trial court issued tentative decisions denying both defendants' motions to compel arbitration. As to the motion of GP/T Holdings, LLC, the trial court rejected the applicability of the arbitration agreement, finding: "[Plaintiff] is making a claim for statutory inspection under Corporations Code section 17106. He makes no claim about the Operating Agreement. Nor does he make a claim about the subject matter of the Operating Agreement, which is the operation of a business to invest in Telscape Communications, Inc. Operating Agreement, ¶ 4.1. There is not even a dispute between the parties regarding the Operating Agreement."

9

The trial court further found GP/T Holdings, LLC had waived its arbitration rights. Based on the litigation conduct prior to the motion to compel arbitration, the trial court concluded GP/T Holdings, LLC had acted in a manner inconsistent with seeking arbitration. The trial court found plaintiff was prejudiced by the conduct of GP/T Holdings, LLC.

As to TSC Acquisition Corporation, the trial court found it was not a party to the arbitration agreement. The trial court concluded plaintiff's petition against TSC Acquisition Corporation did not involve the GP/T Holdings, LLC operating agreement in any way. Even if the operating agreement did apply, the trial court found TSC Acquisition Corporation waived its arbitration rights by its litigation conduct. The trial court adopted both its tentative decisions as the orders of the court. Both GP/T Holdings, LLC and TSC Acquisition Corporation appealed the trial court's orders.

## III. DISCUSSION

The Federal Arbitration Act applies to the arbitration agreement here because it involves interstate commerce. This case is subject to the limited preemptive effect of the Federal Arbitration Act. (9 U.S.C. § 2 ["transaction involving commerce"]; *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277 ["word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full"].) The GP/T Holdings, LLC operating agreement concerned the purchase of TSC Acquisition Corporation stock. GP/T Holdings, LLC is a California company and TSC Acquisition Corporation is incorporated in Delaware. Issues of waiver are treated similarly in both the federal and state context: "[T]he [Federal Arbitration Act] permits a party to obtain a stay of judicial proceedings pending arbitration unless such party is 'in default' of that right. [Citation.] '"Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred."' [Citation.] Accordingly, a party who resists arbitration on the ground of waiver bears a heavy burden [citation], and

10

any doubts regarding a waiver allegation should be resolved in favor of arbitration [citation]. [¶] Our state waiver rules are in accord. State law, like the [Federal Arbitration Act], reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver [citation], waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. [Citations.]" (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*Saint Agnes*); *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 14.)

Our Supreme Court identified six factors relevant to assessing waiver claims: "'In *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, the Court of Appeal referred to the following factors: '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.'" [Citations.]" (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1196; accord, *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 31.) Generally, whether waiver of arbitration rights occurred is a factual question and a trial court's findings are reviewed for substantial evidence. (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1196; *Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 118.) However, where the facts are undisputed and subject to only one reasonable inference, the issue of waiver becomes a question of law which we review de novo. (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1196; *Owens v. County of Los Angeles*, *supra*, 220 Cal.App.4th at p. 118.)

Here, defendants waived their arbitration rights. Defendants initially asserted in their filings that plaintiff has no interest nor was a member of GP/T Holdings, LLC and

11

thus had no standing to file the mandate petitions.  Defendants initially maintained that the GP/T Holdings, LLC operating agreement did not apply to plaintiff.  As noted, the arbitration clause appears in the GP/T Holdings, LLC operating agreement.  This is a position inconsistent with asserting there is a right to arbitrate under  the GP/T Holdings, LLC operating agreement.  Defendants also made no mention of a right to arbitrate in any pleadings or motions filed with the trial court prior to their motions to compel arbitration.  Further, defense counsel admitted the reason he filed the demurrers, propounded discovery and engaged in other law and motion procedures was to try to resolve the matter.

The nine month delay between the filing of the mandate petitions and the motions to compel arbitration was unreasonable.  The only reason given for the delay was that defense counsel was unaware of the existence of the arbitration clause.  Defense counsel's awareness of the arbitration clause is irrelevant.  (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1195, fn. 4; *Zamora v. Lehman*, *supra*, 186 Cal.App.4th at p. 18.)  There is no evidence defendants or their principals were unaware of their right to arbitrate under the GP/T Holdings, LLC operating agreement.  Several appellate courts have found such lengthy delays to be unreasonable.  (See, e.g., *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338 [motion to compel arbitration filed by plaintiff six months after the filing attorney malpractice action was unreasonable]; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451 [defendant's conduct inconsistent with intent to arbitrate because of a six month delay in the filing petition to compel].)

Under both federal and state law, whether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations.  (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1203; *Augusta v. Keehn & Associates*, *supra*, 193 Cal.App.4th at p. 340; *Zamora v. Lehman*, *supra*, 186 Cal.App.4th at p. 16.)  Our Supreme Court explained: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses.  [Citations.]  [¶]  Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect  '"a strong public policy in favor

12

of arbitration as a speedy and relatively inexpensive means of dispute resolution"' and are intended to '"encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing."' [Citation.]  Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.  [¶]  For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]."  (*Saint Agnes*, *supra*, 31 Cal.4th at pp. 1203-1204; see *Augusta v. Keehn & Associates*, *supra*, 193 Cal.App.4th at p. 340.)

Defendants' delay and actions were inconsistent with an intent to arbitrate and have prejudiced plaintiff.  Here, there was substantial law and motion proceedings before the motion to compel arbitration was filed.  Defendants filed demurrers, moved to quash service and propounded some discovery during the nine-month interregnum.  Further, on October 7, 2013, it became necessary for plaintiff to file a motion to compel document production.  We have read the objections to plaintiff's document production demand. They are unmeritorious.  And, the case had been set for trial.  Coupled with the nine month delay in filing their motions to compel arbitration, defendants have prejudiced plaintiff by substantially impairing his ability to take advantage of arbitration's benefits and efficiencies.  There is no merit to defendants' assertion that the only discovery that occurred was a document exchange.  What actually occurred is plaintiff propounded a document demand which was met with unmeritorious objections.  It became necessary for plaintiff to move to compel document production.  Substantial evidence supports the orders denying the motions to compel arbitration.

13

## IV. DISPOSITION

The January 23, 2014 orders denying the motions to compel arbitration are affirmed.  Plaintiff, Michael M. Sachs, as trustee of the Westrec Properties, Inc. & Affiliated Companies 401(k) Plan, is entitled to recover his appeal costs from defendants, GP/T Holdings, LLC and TSC Acquisition Corporation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


GOODMAN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.